UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| VANESSA VELASCO ORTEGA, an individual,<br><br>                              Plaintiff,<br><br>      v.<br><br>OKANOGAN COUNTY, WASHINGTON, a municipal corporation; OKANOGAN COUNTY SHERIFF'S OFFICE; ISAIAH HOLLOWAY, an individual and employee of the OKANOGAN COUNTY SHERIFF'S OFFICE,<br>                              Defendants. | NO. 2:22-CV-0195-TOR<br><br>ORDER GRANTING IN PART DEFENDANT ISAIAH HOLLOWAY'S MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT is Defendant Isaiah Holloways Motion for Summary Judgment (ECF No. 70).  This matter was considered without oral argument.  The Court has reviewed the record and files herein and is fully informed.  For the reasons discussed below, Defendant Isaiah Holloway's Motion for Summary Judgment (ECF No. 70) is GRANTED in part.

ORDER GRANTING IN PART DEFENDANT ISAIAH HOLLOWAY'S
MOTION FOR SUMMARY JUDGMENT~ 1

# BACKGROUND

This matter arises out an alleged *quid pro quo* relationship between Plaintiff and Defendant Holloway.  Defendant Holloway was a deputy, and later a detective, with the Okanogan County Sheriff's Office ("OCSO").  ECF No. 71 at 2.  Defendant Holloway and Plaintiff had prolonged contact based on Plaintiff's involvement with criminal activity, including her active addiction to drugs for most of the alleged relationship.  Beginning in 2014, when Plaintiff was a minor, Defendant Holloway responded to her home in connection to her drug use.  ECF No. 85 at 2.  Sometime in 2019, Defendant Holloway arrested Plaintiff on a warrant and transported her to the Okanogan County Jail.  ECF No. 71 at 2, ¶ 2.  Later, in September of 2019, Defendant Holloway approached Plaintiff in her driveway, appearing to be on duty, while investigating a burglary she was allegedly involved in.  ECF No. 85 at 2.  After some conversation, Plaintiff admitted to assisting the main burglary suspect, and provided some of the stolen items to Defendant Holloway.  *Id*.  Plaintiff maintains that Defendant Holloway told her she could have been arrested for her involvement in the burglary and possession of stolen items, but he argues that he did not arrest her that day because she did not fall under RCW 9A.56.140(1), as knowingly possessing the stolen items.  ECF Nos. 71 at 3, 86 at 10.  Defendant Holloway later called Plaintiff on his work phone to discuss the ongoing prosecution of the burglary.  *Id*. at 5.

1    In December 2019, Defendant Holloway began texting Plaintiff from both

2 his work and personal phone, which Plaintiff describes as "flirtatious."  ECF Nos.

3 71 at 6, 85 at 4.  Though she initially denied his advances, eventually Plaintiff

4 agreed to meet up with Defendant Holloway at Bud Clark field at some time

5 around December 2019, and they engaged in sexual activity in his patrol car,

6 Plaintiff alleges while he was on duty.  *Id*.  Defendant Holloway argues that the

7 events of their first sexual encounter could not have happened the way Plaintiff

8 described, given the physiology of the patrol car.  ECF No. 71 at 8.  Plaintiff

9 alleges that the next time they met up for sex at Bud Clark field, Defendant

10 Holloway was on duty, in his patrol car, and carrying his OCSO issued gun.  ECF

11 No. 85 at 4.

12    Plaintiff alleges she and Defendant Holloway had sex three additional times

13 between 2019 and 2020, after he had seen her "at a known drug house in

14 possession of a meth bong with meth in it."  *Id*.  Twice in Bud Clark Field while he

15 was in his own vehicle and plain clothes, and once in the Wenatchee Costco

16 parking lot.  ECF No. 71 at 10–11.  Throughout the course of their relationship,

17 Plaintiff alleges that Defendant Holloway would provide her with tips for avoiding

18 law enforcement while she was engaged in illegal activity.  ECF No. 88 at 3, ¶ 6.

19 She in turn argues that she never provided him with any information outside of the

20 stolen property for fear of appearing to be a police informant.  ECF No. 72 at 57.

ORDER GRANTING IN PART DEFENDANT ISAIAH HOLLOWAY'S
MOTION FOR SUMMARY JUDGMENT~ 3

In 2020, Plaintiff's brother reported to OCSO that Plaintiff and Defendant Holloway had been engaging in an inappropriate relationship which resulted in Defendant Holloway being disciplined, in part, for developing a "close personal associations with any inmate, practicing criminal . . ." ECF No. 85 at 5. However, Plaintiff maintains that even after being disciplined, Defendant Holloway carried on the sexual nature of their relationship through a Facebook profile. *Id*. Plaintiff alleges that during these encounters, she was an active user of methamphetamine, thereby unable to consent, and coerced through a promise of leniency related to criminal activity she was allegedly involved in. ECF No. 86 at 4–5. Defendant Holloway disputes this characterization, citing Plaintiff's deposition where she stated, "I knew what I was doing, I was just high." ECF No. 72 at 32. Defendant Holloway argues that summary judgment is proper because he was not acting under the color of state law when the acts were committed, and even if he were, he is shielded by qualified immunity. ECF No. 70 at 3.

## DISCUSSION

### I.    Summary Judgment Standard

The Court may grant summary judgment in favor of a moving party who demonstrates "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, the court must only consider admissible

evidence. *Orr v. Bank of America*, NT & SA, 285 F.3d 764, 773 (9th Cir. 2002). The party moving for summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to identify specific facts showing there is a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id*. at 252.

For purposes of summary judgment, a fact is "material" if it might affect the outcome of the suit under the governing law. *Id*. at 248. Further, a dispute is "genuine" only where the evidence is such that a reasonable jury could find in favor of the non-moving party. *Id*. The Court views the facts, and all rational inferences therefrom, in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). Summary judgment will thus be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## II. 42 U.S.C. § 1983

To make a 42 U.S.C. § 1983 claim, a plaintiff must show that (1) a person acting under color of state law (2) committed an act that deprived the plaintiff of

1   some right, privilege, or immunity protected by the Constitution or laws of the

2   United States.  *Leer v. Murphy*, 844 F.2d 628, 632–33 (9th Cir. 1988).  Here,

3   Plaintiff argues that her Fourth Amendment right to a reasonable expectation of

4   privacy and freedom from excessive force and Fourteenth Amendment procedural

5   and substantive due process, as well as equal protection rights, have been violated.

6   ECF No. 1 at 27–30.

7   　　　　*A.  Under "Color of Law"*

8   　　　　As to the first prong, Defendant Holloway argues that he was not acting

9   under the color of state law at the time of the sexual relationship.  ECF No. 70 at 7.

10  The court disagrees.  "It is firmly established that a defendant in a § 1983 acts

11  under the color of state law when he abuses the position given to him by the state.

12  Thus generally, a public employee acts under color of state law while acting in his

13  official capacity or while exercising his responsibilities pursuant to state law."

14  *West v. Atkins*, 487 U.S. 42, 49–50 (1988).  A pretense of state law is lacking if the

15  wrongful act is "not in any way related to the performance of the duties of the state

16  employee."  *Dang Vang v. Vang Xiong X. Toyed*, 944 F.2d 476, 479 (9th Cir.

17  1991) (quoting *Murphy v. Chicago Transit Authority*, 638 F.Supp. 464, 467

18  (N.D.Ill.1986)).  Though, if a state actor is "pursuing his own goals," then he is not

19  acting under the color of law unless he "purport[s] or pretend[s]" to do so.  *Van Ort*

20  *v. Estate of Stanewich*, 92 F.3d 831, 838 (9th Cir.1996) (internal quotations and

1   citations omitted).

2         Defendant Holloway's argument surrounding personal pursuits is not

3   compelling given that his sexual relationship with Plaintiff began with his

4   investigation and the ongoing prosecution of a burglary in which she was allegedly

5   involved, and the allegation that he updated her with law enforcement activities to

6   keep her out of trouble.  ECF No. 85 at 3, 17.  This case is similar to *Dang Vang v.*

7   *Vang Xiong X. Toyed*, 944 F.2d 476, 478 (9th Cir. 1991), in which a Washington

8   State Employment Security officer took advantage of his position of government

9   authority to rape refugees he was in charge of, based on the close relationship he

10  formed with them.  There, the Ninth Circuit found a reasonable person might find

11  that the defendant acted under the color of state law because he "used his

12  government position to exert influence and physical control over these plaintiffs."

13  *Id*. at 480.  Evidence there existed that the defendant came into contact with the

14  plaintiffs through the course of his job, and they were relying on him to assist them

15  in finding employment, thereby suggesting a reasonable person could find that he

16  used this position of government authority to violate the plaintiffs' constitutional

17  rights.  *Id*.  Here, while Plaintiff is not claiming that Defendant Holloway forcibly

18  raped her, a reasonable person may find he used the authority of his office to

19  maintain their relationship.  Like in *Dang Vang*, Defendant Holloway met Plaintiff

20  because of her involvement with criminal activity through his job with OCSO, and

ORDER GRANTING IN PART DEFENDANT ISAIAH HOLLOWAY'S
MOTION FOR SUMMARY JUDGMENT~ 7

continued to have contact with her related to his job throughout the course of their sexual relationship. ECF No. 85 at 17. Sexual activity is not committed under the color of law when the conduct is not linked to a law-enforcement officers' official capacity or is otherwise job related. *See Roe v. Humke*, 128 F.3d 1213, 1217-18 (9th Cir. 1997) (affirming a district court's grant of summary judgment because the defendant did not use his position of trust and authority as a police officer to create the situation whereby he could assault her, and that nothing in the record suggested his actions "were related in a meaningful way either to his governmental status or to the performance of his duties"); *see also Ricky R. v. City of Alhambra*, 2008 WL 11429771, at *6 (C.D. Cal. Feb. 7, 2008) (finding that no reasonable jury could conclude that the defendant was acting under color of law when he met the plaintiff at a mutual friend's barbeque, developed a relationship with plaintiff outside of his employment as an APD officer, and engaged in sexual activity with Plaintiff at his home, in his car, and at other private locations).

While Plaintiff's allegation that Defendant Holloway was in his uniform and OCSO vehicle when the two initially met for sex is not necessarily dispositive, *Postma v. Waters,* 934 F.2d 324 (9th Cir. 1991), when taken with the ongoing investigation into the September 2019 burglary and Plaintiff's alleged involvement, combined with her continued drug use, the show of force may lead a fact finder to believe that Defendant Holloway was acting under the color of state

law during the course of their sexual relationship.  *See McDade v. West*, 223 F.3d 1135, 1141 (9th Cir. 2000) (finding that a county employee abused her privileges by accessing electronically stored information for an improper purpose was acting under the color of law because she abused her responsibilities under her official duties); *Cf. Huffman v. Cnty. of Los Angeles*, 147 F.3d 1054, 1058 (9th Cir. 1998) (finding a shooting by an off-duty sheriff's deputy was not an official act because the defendant was not on duty, not wearing his uniform, carrying a personal weapon with bullets from the sheriff's department, failed to identify himself as a police officer before taking any action, and failed to issue commands to plaintiff). Here, Plaintiff's introduction to Defendant Holloway involved his official capacity as a law enforcement officer, and while it may be an understatement to say that the line between "professional" and "personal" between the two of them blurred, a reasonable person may find that he was acting under the guise of his governmental authority during their relationship.

### B. Constitutional Violation

As to the second prong of the 42 U.S.C. § 1983 test, Plaintiff alleges violations of both her Fourth and Fourteenth Amendment rights.  The Supreme Court has instructed that "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due

1    process, must be the guide for analyzing these claims." *Albright v. Oliver*, 510

2    U.S. 266, 273 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989))

3    (plurality opinion of Rehnquist, C.J.) (internal quotation marks omitted).

4    　　The Fourth Amendment of the United States Constitution protects "[t]he

5    right of the people to be secure in their persons, houses, papers, and effects, against

6    unreasonable searches and seizures."  U.S. Const. amend. IV.  The Fourth

7    Amendment safeguards against two separate constitutional infringements, searches

8    and seizures.  *United States v. Jefferson*, 566 F.3d 928, 933 (9th Cir. 2009)  "A

9    Fourth Amendment seizure does not occur whenever there is a governmentally

10   caused termination of an individual's freedom of movement . . . nor even whenever

11   there is a governmentally caused and governmentally desired termination an

12   individual's freedom of movement . . . but only when there is a governmental

13   termination of freedom of movement through means intentionally applied." *Cnty.*

14   *of Sacramento v. Lewis*, 523 U.S. 833, 844 (1998) (giving the example of no

15   Fourth Amendment seizure when a police pursuit with flashing lights and sirens

16   ended with police accidentally crashing into the suspect they were pursing); *see*

17   *also California v. Hodari* D., 499 U.S. 621, 111 (1991) ("To constitute a seizure of

18   the person, just as to constitute an arrest—the quintessential 'seizure of the person'

19   under Fourth Amendment jurisprudence—there must be either the application of

20   physical force, however slight, or, where that is absent, submission to an officer's

ORDER GRANTING IN PART DEFENDANT ISAIAH HOLLOWAY'S
MOTION FOR SUMMARY JUDGMENT~ 10

'show of authority' to restrain the subject's liberty.").  While Plaintiff alleges her Fourth Amendment right to be free from unreasonable search and seizure has been violated by Defendant Holloway, she does not allege any sexual contact occurred while she was under arrest.  *Fontana v. Haskin*, 262 F.3d 871, 881 (9th Cir. 2001) ("Sexual misconduct by a police officer toward another generally is analyzed under the Fourteenth Amendment; sexual harassment by a police officer of a criminal suspect during a continuing seizure is analyzed under the Fourth Amendment.").  Plaintiff attested to the fact that nothing inappropriate occurred during instances where Defendant Holloway placed her under arrest under a warrant in 2019, and she met him at Bud Clark field without any physical force exerted.  ECF No. 71 at 2.  Therefore, she was not "seized" for the purposes of the Fourth Amendment.  While she could have been arrested at points throughout their sexual relationship, Plaintiff's claim is better analyzed under the Fourteenth Amendment.  *Fontana*, 262 F.3d at 882 n.6 (9th Cir. 2001).

Plaintiff contends that her Fourteenth Amendment procedural and substantive due process rights as well as equal protection rights were violated by Defendant Holloway's acts.  ECF No. 1 at 28–29.  The Fourteenth Amendment due process clause provides that no state shall "deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  The clause confers three separate constitutional protections: a guarantee of fair

ORDER GRANTING IN PART DEFENDANT ISAIAH HOLLOWAY'S
MOTION FOR SUMMARY JUDGMENT~ 11

procedure, called "procedural due process"; protection from government action

based on discrimination under the "equal protection clause"; and a prohibition

against arbitrary government action regardless of the fairness of the procedure,

referred to as "substantive due process."  *Gallo v. Miller*, 983 F.2d 1076 (9th Cir.

1993); *Ballou v. McElvain*, 29 F.4th 413, 422 (9th Cir. 2022).  These guarantees

have historically been applied to deliberate decisions of government officials as it

relates to the deprivation of a person's life, liberty, or property.  *Daniels v.

Williams*, 474 U.S. 327, 331 (1986) (internal citations omitted).

Defendant Holloway's Motion for Summary Judgment does not reference

Plaintiff's procedural due process or substantive due process claim directly, instead

stating "Plaintiff fails to provide any facts that Holloway, in engaging in a sexual

relationship with Plaintiff, knowingly violated" the right to be free from

deprivation of liberty and property and right to be free from invasion or

interference with Plaintiff's privacy and bodily integrity.  ECF No. 70 at 14–15.

Thus, the Court takes them as not at issue for the purposes of the 42 U.S.C. § 1983

analysis and instead considers them solely under his defense of qualified

immunity.

However, the Motion for Summary Judgment does address Plaintiff's equal

protection claim.  The Fourteenth Amendment's equal protection clause "is

essentially a direction that all persons similarly situated should be treated alike."

ORDER GRANTING IN PART DEFENDANT ISAIAH HOLLOWAY'S
MOTION FOR SUMMARY JUDGMENT~ 12

*City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985). "To prevail

on an Equal Protection claim brought under § 1983, plaintiffs must allege facts

plausibly showing that 'the defendants acted with an intent or purpose to

discriminate against [them] based upon membership in a protected class.'"

*Hartmann v. California Dept. of Corrections and Rehabilitation*, 707 F.3d 1114,

1123 (9th Cir. 2013) (quoting *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166

(9th Cir. 2005)). Thus, Plaintiff must show (1) [she] is a member of a protected

class, and (2) [she] is being intentionally treated differently from a similarly

situated class. *See Washington v. Davis*, 426 U.S. 229, 239 (1976); *Draper v.*

*Rhay*, 315 F.2d 193, 198 (9th Cir. 1963). Moreover, a public employee who

abuses his authority to sexually harass a private citizen violates the Fourteenth

Amendment. *See Sampson v. Cnty. of Los Angeles by & through Los Angeles*

*Cnty. Dep't of Child. & Fam. Servs.*, 974 F.3d 1012, 1023 (9th Cir. 2020) ("[W]e

hold that the Equal Protection Clause protects the right to be free from sexual

harassment at the hands of public officials providing social service."); *Johnson v.*

*Martin*, 195 F.3d 1208, 1217 (10th Cir. 1999); *Hess v. Garcia*, 72 F.4th 753, 761

(7th Cir. 2023).

 Plaintiff and Defendant Holloway disagree as to whether Defendant

Holloway could have ever arrested Plaintiff for criminal activity. ECF Nos. 70 at

15–16, 85 at 16–17. If true that Plaintiff could have been arrested because of her

involvement with crime and was not because of her agreement to engage in a

sexual relationship with Defendant Holloway, then his treatment of her is

disparate.  This question of disputed fact should ultimately be considered by a jury.

*Sampson,* 974 F.3d at 1024 ("Simply put, if she were a man, Sampson would not

have experienced this harassment in seeking services from Obakhume, and that

discrepancy fundamentally offends the equality and fairness principles embodied

in the Equal Protection Clause."); *Hess*, 72 F.4th at 761 ("There is no suggestion

here that Garcia was an 'equal opportunity harasser' who sexually assaulted men

as well as women.  Plaintiff's allegations easily support an inference that Garcia

acted this way based on Hess's sex.").

Additionally, Defendant Holloway argues that there can be no constitutional

violation because the activity was consensual.  ECF No. 70 at 7.  Plaintiff argues

that she was unable to consent to sexual activity given her drug addiction during

their relationship, and points to Washington State drug and alcohol consent laws.

ECF No. 85 at 13; *DeSean v. Sanger*, 536 P.3d 191, 194 (Wash. 2023) (finding that

Washington State law specifies that "[c]onsent cannot be freely given when a

person does not have capacity due to disability, intoxication, or age").  Plaintiff

stated in her deposition "I knew what I was doing. I was just high" in response to a

question about the frequency of her drug use during the period of her relationship

with Defendant Holloway as well as "I felt like it was consensual, but I felt like I

was manipulated." ECF No. 72 at 32, 46. Plaintiff's answers leave room for doubt as to whether she fully consented to the relationship, given her involvement with illegal activities, and should be decided by a trier of fact. *See Knickerbocker v. City of Colville*, No. 2:15-CV-19-RMP, 2016 WL 4367251, at *5 (E.D. Wash. Aug. 11, 2016) ("Plaintiffs state that they did not actively resist Newport's advances because they were concerned of his status as a law enforcement officer . . . If a jury finds that Plaintiffs did consent freely and voluntarily, then Plaintiffs will not have suffered a violation of their constitutional rights. However, the Court cannot appropriately make that determination at the summary judgment stage given the conflicting interpretations of the record.")

### C. Qualified Immunity

Nevertheless, Defendant Holloway argues he is entitled to qualified immunity for each of Plaintiff's constitutional claims as none are "clearly established." Qualified immunity shields government actors from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). On summary judgment, a court examines whether a state official is entitled to qualified immunity by determining (1) whether the evidence viewed in the light most favorable to the plaintiff is sufficient to show a violation of a constitutional right and (2) whether that right was "clearly established at the time

of the violation." *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 599 (9th Cir. 2019).  If a law was not clearly established at the time, a government official could not have reasonably anticipated subsequent legal developments, nor could they have known that the law prohibited the conduct as it had not been previously identified as unlawful.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

At step one, the Court assesses whether or not there is a triable issue of fact as to whether a constitutional violation has been committed.  *Hope v. Pelzer*, 536 U.S. 730, 736 (2002).  As discussed above, the Court finds that Plaintiff has plausibly stated a claim for a violation of her equal protection right under the Fourteenth Amendment.  Plaintiff also claims she has experienced a deprivation of her procedural and substantive due process rights under the Fourteenth Amendment, which Defendant Holloway argues were not clearly established under the factual circumstances of this case when they occurred, and thus he could not have known that his conduct created a constitutional violation.  ECF No. 70 at 14–15.  Though not addressed by either party beyond generality, the Court must first determine whether a question of fact still remain for both Plaintiff's substantive and procedural due process claims.  Defendant Holloway concedes that an individual has a due process right to be free of sexual and physical abuse but argues that objectively their relationship could not be considered "sexual abuse."  ECF No. 96 at 7–8.

1    In her Complaint, Plaintiff argues that her Fourteenth Amendment

2  procedural due process right has been violated because Defendant Holloway

3  should have arrested her for criminal activity rather than engage her in a sexual

4  relationship.  ECF No. 1 at 21.  Defendant Holloway argues he did not have the

5  legal authority to arrest Plaintiff for her alleged involvement in stolen property on

6  September 13, 2019, but does not address any other allegation of criminal activity

7  Plaintiff asserts he was aware of.  ECF No. 70 at 12.  As to her substantive due

8  process rights, Plaintiff argues she was deprived of her liberty interest because

9  Defendant Holloway: (a) exacted sexual acts from her instead of directing her

10  through standard law enforcement and court procedures; (b) sexually assaulted her;

11  and (c) coerced her into performing sexual acts on multiple different occasions

12  using his authority as a deputy.  ECF No. 1 at 21.

13    A procedural due process claim requires (1) a deprivation of a

14  constitutionally protected liberty or property interest, and (2) a denial of adequate

15  procedural protections.  *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*,

16  149 F.3d 971, 982 (9th Cir. 1998).  However, a procedural due process claim is not

17  viable unless a plaintiff identifies a protected liberty or property interest.  *See*

18  *Kerry v. Din*, 576 U.S. 86, 101 (2015).  It appears that Plaintiff is arguing that she

19  was deprived of a liberty interest of "being free of sexual and physical abuse from

20  law enforcement."  ECF No. 85 at 18.  Even if the type of bodily integrity liberty

interest Plaintiff describes is recognized in precedent for purposes of procedural due process, the OCSO had in place rules that prohibited members from engaging in relationships with practicing criminals, and reprimanded Defendant Holloway when it was discovered he had engaged in a sexual relationship with Plaintiff. ECF No. 85 at 4–5. At this stage in proceeding, the nonmoving party must set forth sufficient evidence to show that a genuine issue of fact remains. *Liberty Lobby, Inc*., 477 U.S. at 250. Plaintiff has pointed to no caselaw that provides a specific liberty interest that is infringed and cannot satisfy prong two of the test because OCSO had a procedure in place dealing with sexual harassment. Summary judgment is therefore proper regarding Plaintiff's procedural due process claim.

"Substantive due process 'forbids the government from depriving a person of life, liberty, or property in such a way that shocks the conscience or interferes with the rights implicit in the concept of ordered liberty.'" *Corales v. Bennett*, 567 F.3d 554, 568 (9th Cir. 2009) (quoting *Nunez v. City of L.A*., 147 F.3d 867, 871 (9th Cir. 1998)). A claim for substantive due process recognizes unenumerated fundamental rights, including bodily integrity. *P.B. v. Koch,* 96 F.3d 1298, 1303 (9th Cir. 1996). The Supreme Court has confirmed that:

> Included in the liberty protected by the [Due Process Clause of the] Fourteenth Amendment is the concept of personal bodily integrity and the right to be free of unauthorized and unlawful physical abuse by state intrusion . . . Freedom from such physical abuse includes the right to be

1
2
3
4

> free from certain sexually motivated physical assaults and coerced sexual battery. It is not, however, every unjustified touching or grabbing by a state official that constitutes a violation of a person's constitutional rights. The physical abuse must be of a serious substantial nature that involves physical force, mental coercion, bodily injury or emotional damage which is shocking to one's consci[ence].

5    *United States v. Lanier*, 520 U.S. 259, 262 (1997).

6        Here, Plaintiff is arguing that Defendant Holloway's actions shock the

7    conscience because he used his law enforcement position of power to coerce her

8    into sexual activity as a woman who was addicted to drugs and involved with

9    ongoing criminal activity.  ECF No. 85 at 12.  The Ninth Circuit has addressed a

10   liberty interest in the right to "bodily privacy,"  *Sepulveda v. Ramirez*, 967 F.2d

11   1413, 1416 (9th Cir. 1992), found that sexual harassment of a juvenile while in

12   custody violated her substantive due process right of bodily integrity, *Vazquez v.*

13   *Cnty. of Kern*, 949 F.3d 1153, 1162–63 (9th Cir. 2020), and determined that had an

14   officer's sexual harassment and unwanted touching of an arrestee occurred in a

15   setting besides a Fourth Amendment seizure, it would have violated substantive

16   due process, *Fontana*, 262 F.3d at 882 n.6.  Other circuits have more explicitly

17   recognized sexual interactions between a law enforcement officer and individuals

18   in contact with the law as a violation of the substantive due process clause's right

19   to bodily integrity.  *Hess*, 72 F.4th at 758; *Sexton v. Cernuto*, 18 F.4th 177, 193

20   (6th Cir. 2021); *Rogers v. City of Little Rock, Ark.*, 152 F.3d 790, 796 (8th Cir.

ORDER GRANTING IN PART DEFENDANT ISAIAH HOLLOWAY'S
MOTION FOR SUMMARY JUDGMENT~ 19

1  1998).

2      In construing Plaintiff's claims liberally, as the Court must when conducting

3  a summary judgment review, it appears that the outstanding issue of consent and

4  the missing text messages providing more detail about the nature of their

5  relationship, leave room for questions of fact surrounding the coercive nature of

6  Defendant Holloway's actions.  The Court disagrees with Plaintiff's

7  characterization that Defendant Holloway's "sexual predation," was more extreme

8  than the kind described in *Fontana* where the plaintiff was placed under arrest for

9  driving under the influence and was sexually harassed while in the backseat of a

10 patrol car with an officer sitting next to her.  262 F.3d at 881 ("There is no

11 situation that would justify any amount of purposeful sexual verbal and physical

12 predation against a handcuffed arrestee.").  Here, Plaintiff was never confined

13 against her will by Defendant Holloway, and whether coerced or not, met him at a

14 neutral location for sex acts.  Nevertheless, a jury, rather than the Court, should

15 determine whether Plaintiff was able to consent and whether a reasonable person in

16 her position would be free to refuse unwanted sexual advances.

17      The second prong of the qualified immunity test determines whether every

18 reasonable official in the same position as the defendant would understand that the

19 conduct was unlawful in the situation she was confronted with.  *Taylor v. Barkes*,

20 575 U.S. 822, 824 (2015) (per curiam) (holding that for qualified immunity

ORDER GRANTING IN PART DEFENDANT ISAIAH HOLLOWAY'S
MOTION FOR SUMMARY JUDGMENT~ 20

purposes, law is "clearly established" if "every reasonable official would have understood that what he is doing violates th[e] right"); *Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 678 (9th Cir. 2021).  Stated another way, a right is clearly established for qualified immunity purposes if "'it would be clear to a reasonable [officer] that [his] conduct was unlawful in the situation he confronted' ... or whether the state of the law [at the time of the alleged violation] gave 'fair warning' to [him] that [his] conduct was unconstitutional."  *Clement v. Gomez*, 298 F.3d 898, 906 (9th Cir. 2002) (internal citation omitted).  A clearly established right does not necessarily require that an identical factual scenario exists in caselaw.  *Wilk v. Neven*, 956 F.3d 1143, 1148 (9th Cir. 2020) (internal citations omitted).  Instead, the turning point of qualified immunity is whether the official had "fair notice" that his actions were unconstitutional.  *Hope*, 536 U.S. at 741.

Defendant Holloway blankets each of Plaintiff's claims under the umbrella of qualified immunity, arguing that if he violated any of Plaintiff's protected constitutional rights, he did not do so knowingly.  ECF No. 70 at 15.  Regarding Plaintiff's equal protection claim, the Ninth Circuit has held "the Equal Protection Clause protects private individuals who suffer sexual harassment at the hands of public officials providing them with social services."  *Sampson*, 974 F.3d at 1024.  In *Sampson,* a social worker in charge of a custody case made unwelcome advances toward a woman attempting to gain custody of her nephew, which

resulted in a tumultuous guardianship process when she rebuffed him. *Id*. at 1016–

17. The Court there found a clear Fourteenth Amendment violation of the right to

be free of sexual harassment by a public official but had never before had the

opportunity to consider the right outside of the context of workplace harassment or

a school setting. *Id*. at 1024. As a result, summary judgment was proper as the

social worker was not on notice that his conduct violated a constitutional right, and

therefore he was entitled to qualified immunity. *Id*. at 1025. The Court is satisfied

that while not an identical case, the type of trust placed in a sheriff's deputy is

similar to that of a social worker as public officials, and therefore the leverage that

both wielded to potentially coerce sexual activity is a constitutional violation. Like

the plaintiff in *Sampson* who faced retaliation from an official wielding power over

her, a reasonable juror may find that Plaintiff risked negative action from

Defendant Holloway if she did not comply with his sexual advances based on her

status as a woman. Should a jury find that Defendant Holloway engaged in a

sexual relationship that violated Plaintiff's equal protection right to be free from

sexual harassment, qualified immunity will not shield him. *See also Johnson*, 195

F.3d at 1218 (finding that a public official's reasonable application of caselaw

would place him on notice that abuse of his authority for sexual gratification

amounted to an equal protection clause violation of nonemployees seeking services

from the city, and therefore he was not entitled to qualified immunity).

1    As to Plaintiff's claim of substantive due process, "[n]o degree of sexual

2    assault by a police officer acting under color of law could ever be proper." *Rogers*,

3    152 F.3d at 796.  However, the Ninth Circuit has yet to consider a case similar

4    enough to Plaintiff's allegation that an officer used his position to coerce a woman

5    addicted to drugs and involved with the law to engage in a sexual relationship in

6    exchange for favorable treatment to provide notice of a substantive due process

7    violation.  *Fontana* is a stark comparison because there the plaintiff was seized for

8    purposes of the Fourth Amendment, whereas here, though Plaintiff alleges she was

9    unable to consent to sexual activity, she was not "seized."  262 F.3d at 881.  Most

10   of the cases relied upon in *Fontana's* discussion of police activity that would result

11   in a substantive due process violation also present different factual material than

12   currently before the Court.  In *Rogers*, the Eighth Circuit held that a due process

13   violation of bodily integrity can be predicated on mental coercion because the

14   plaintiff did not express that the sexual activity was nonconsensual.  152 F.3d at

15   797.  However, that case is factually different, as the police officer-defendant in

16   *Rogers* followed the plaintiff to her home under the guise of allowing her to

17   produce proof of insurance after he pulled her over, and telling her that she "owed

18   him one," for not giving her a citation, before raping her in her bedroom.  *Id*. at

19   793.  Though she did not protest, there the court found that the officer's presence

20   in her home after their interaction regarding the traffic violation created a scenario

ORDER GRANTING IN PART DEFENDANT ISAIAH HOLLOWAY'S
MOTION FOR SUMMARY JUDGMENT~ 23

1  in which she was mentally coerced into having sex with him, thereby depriving her

2  a right to substantive due process.  *Id*. at 798.  *Rogers* is not similar enough to this

3  case to create notice, as Plaintiff does not allege Defendant Holloway overtly

4  threatened her with law enforcement if she did not have sex with him.  Nor did

5  Defendant Holloway use the time surrounding Plaintiff's warrant arrest or the

6  burglary investigation to coerce her into sexual activity with him in a confined

7  space, like her home.

8        Two cases cited by *Fontana* provide factual similarity to the facts at issue

9  but are importantly distinguishable.  In *Jones v. Wellham*, 104 F.3d 620, 628 (4th

10  Cir. 1997), a police officer pulled a woman over for driving under the influence,

11  told her he would give her a ride home rather than a citation, and raped her in a

12  parking lot.  There, the Fourth Circuit found that, if the defendant was adjudicated

13  as guilty of forcibly raping the plaintiff under the conditions as she described, the

14  claim was properly categorized as a violation of the Fourteenth Amendment

15  substantive due process clause's right to bodily integrity.  *Id*.  However, this out of

16  circuit case does not provide the kind of notice to Defendant Holloway necessary

17  to impose liability due to the proximity in time to potential criminal activity and

18  the sexual activity.  Though not under arrest as similar to Plaintiff here, the

19  plaintiff in *Jones* was confined to a police vehicle after being pulled over and had

20  physically nowhere to go.  The sexual activity took place immediately following

her interaction with the officer regarding her liability for potentially driving under the influence, and she was present in his police vehicle before knowing that sexual activity would take place.  Here, Plaintiff argues she felt manipulated into meeting with Defendant Holloway for sexual activity at various third-party locations, but never alleges that Defendant Holloway explicitly demanded or attempted to engage in sexual activity related to any criminal activity she was allegedly involved in. ECF No. 86 at 24 (nothing inappropriate occurred after she was arrested on a warrant).  Though Plaintiff alleges that at various points, Defendant Holloway observed her with drug paraphernalia or residing at a "drug house," the type of coercion exhibited in *Jones*, whereby the plaintiff was taken from one location to another in a police car, is not similar to the facts at hand here.  ECF No. 86 at 5.

And similarly, in *Haberthur v. City of Raymore, Missouri*, 119 F.3d 720, 721 (8th Cir. 1997), provides a distinction for the type of conduct at issue.  In *Haberthur*, over a period lasting more than two weeks, a police officer threatened a woman with a speeding ticket at her home and job, eventually touching her sexually at work while he was in uniform and thereafter drove past her house slowly in his patrol car and personal vehicle.  *Id*.  There the Eighth Circuit found a colorable claim for a Fourteenth Amendment substantive due process violation.  *Id*. at 724.  However, the facts of *Haberthur* are different than those at issue here, because the defendant would follow the plaintiff to her work or home and overtly

threaten her with a ticket, whereas here, Defendant Holloway would allegedly

message Plaintiff to meet elsewhere, and the threat that Plaintiff perceived is

arguably more implied.  In short, there are no cases that would provide notice that

coercion in the form of looming potential charges for criminal activity and

assistance in avoiding future contact with the police is a "clearly established"

violation.  As such, Defendant Holloway is entitled to qualified immunity for

Plaintiff's substantive due process claim.

## III.    Washington Law Against Discrimination Claims

Defendant Holloway argues that Plaintiff's Washington Law Against

Discrimination claim must be dismissed because she provides no proof that she

was discriminated against because of her gender in a place of public

accommodation.  ECF No. 70 at 18.  At the outset, the Washington Law Against

Discrimination ("WLAD"), prohibits "any person or the person's agent or

employee [from committing] an act which directly or indirectly results in any

distinction, restriction, or discrimination" based on a person's membership in a

protected class.  RCW 49.60.215.  The legislative intent of the WLAD is set forth

within the document and states in part:

> It is an exercise of the police power of the state for the protection of the
> public welfare, health, and peace of the people of this state, and in
> fulfillment of the provisions of the Constitution of this state concerning
> civil rights. The legislature hereby finds and declares that practices of
> discrimination against any of its inhabitants because of race, creed,
> color, national origin, families with children, sex, marital status, age, or

the presence of any sensory, mental, or physical disability ... are a matter of state concern, that such discrimination threatens not only the rights and proper privileges of its inhabitants but menaces the institutions and foundation of a free democratic state. A state agency is herein created with powers with respect to elimination and prevention of discrimination in employment, in credit and insurance transactions, in places of public resort, accommodation, or amusement, and in real property transactions because of race, creed, color, national origin, families with children, sex, marital status, age, or the presence of any sensory, mental, or physical disability . . .

RCW 49.60.1010.

Both the statute and caselaw demand a liberal construction in application of WLAD, in order to comply with the purpose of the law.  RCW 49.60.020; *Shoreline Community College Dist. No. 7 v. Employment Sec. Dep't*, 120 Wash.2d 394, 406 (1992).  To establish a claim under RCW 49.60.215 in a place of public accommodation, a plaintiff must show:

(1) the plaintiff is a member of a protected class, (2) the defendant's establishment is a place of public accommodation, (3) the defendant discriminated against the plaintiff when it did not treat the plaintiff in a manner comparable to the treatment it provides to persons outside that class, and (4) the plaintiff's protected status was a substantial factor that caused the discrimination.

*Fell v. Spokane Transit Authority*, 128 Wash.2d 618, 637 (1996).

Factors one through three are a mixed question of fact and law, and the fourth factor is purely a question of fact.  *Id*.  Defendant Holloway concedes that Plaintiff is a member of a protected class, and that Bud Clark field is a place of

ORDER GRANTING IN PART DEFENDANT ISAIAH HOLLOWAY'S MOTION FOR SUMMARY JUDGMENT~ 27

public accommodation.[1]  ECF No. 96 at 10.  Both these contentions are supported in the statute, as "sex" is defined as gender, and Bud Clark Field has been described as a public park, falling under "any place of public . . .amusement." RCW 49.6040(2), (28).  Defendant Holloway argues that Plaintiff's WLAD claim fails because she provides no required connection between her protected class and the place of public accommodation, as there is no assertion that he only allowed men to enter Bud Clark Field.  ECF No. 70 at 18–19.  However, a through line between the place of accommodation and the discrimination based on a protected class is not required by WLAD, which makes it unlawful for, "any person or the person's agent or employee to commit an act [of] discrimination . . . in any place of public . . . accommodation."  *Floeting v. Group Health Cooperative*, 192 Wash.2d 848, 857 (2019) (quoting RCW 49.60.215).  "There must be some casual nexus between *the act* complained of and the *resulting discrimination* in order for the act to be an unfair practice under RCW 49.60.215."  *Fell*, 128 Wash. 2d at 640 (emphasis added).  Plaintiff's WLAD claim is premised on the argument that

---

[1] Defendant Holloway also argues that drug addiction is not a defined class which satisfies the first factor of the WLAD test.  ECF No. 70 at 18.  However, given the concession that Plaintiff's gender does satisfy the first factor, the Court need not address whether her status as a drug addict would satisfy the first factor.

ORDER GRANTING IN PART DEFENDANT ISAIAH HOLLOWAY'S
MOTION FOR SUMMARY JUDGMENT~ 28

Defendant Holloway discriminated against her based on her status as a woman by sexually harassing her, and that Bud Clark Field is simply a setting of public accommodation in which the violation occurred.

Moreover, Washington State courts have analyzed sexually motivated discrimination in violation of WLAD in the same discussion as the Fourteenth Amendment equal protection clause. *See City of Prosser v. Teamsters Union Loc. 839*, 21 Wash. App. 2d 1058, *review denied*, 200 Wash. 2d 1005, 516 P.3d 383 (2022) (holding that the equal protection clause of the Fourteenth Amendment, article I, section 12 of the Washington Constitution, and WLAD are "well defined and dominant public policies aimed at ending current discrimination and preventing future discrimination in places of public accommodation and by officials acting under color of state law"). "Sexual harassment is a form of sex discrimination, which we analyze like other forms of discrimination in places of public accommodation." *Floeting,* 192 Wash. 2d at 853. A single discriminatory act in a place of public accommodation may violate the WLAD. *Id.* at 853. As such, the Court finds triable issues of fact relating to Plaintiff's WLAD claim, given her position that Defendant Holloway targeted her for sexual activity due to her status as a woman, and did so in a place of public accommodation. Therefore, factor three, whether Defendant Holloway discriminated against Plaintiff when he did not treat her in a manner comparable to the treatment he provides to persons

outside that class, and factor four, whether Plaintiff's protected status was a substantial factor that caused the discrimination, are left for a jury determination.

## IV.   Loss of Consortium

As a preliminary matter, Plaintiff's claim for loss of consortium could be dismissed for failure to answer Defendant Holloway's contention that no questions of fact remain, thereby conceding the point.  *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir. 1989).  Washington State law has recognized specific claims under a loss of consortium theory of liability such as a claim brought by a parent when a child has been injured or killed under RCW § 4.24.010.[2]  Though silent in

---

[2] However, the Court cannot locate in the record any concession that Plaintiff is "not claiming" that Defendant Holloway is the reason she lost custody of her children.  Defendant Holloway's attempt to cite to the record through "the Declaration of Amanda Bley Kuehn in Support of Defendant Isaiah Holloway's Statement of Undisputed Facts in Support of Motion for Summary Judgment at Exhibit A," is neither in compliance with this Court's Scheduling Order requiring that references to the record be reflected as "ECF No. __ at __" (ECF No. 27 at 7), nor helpful because there are two ECF entries could match that description, ECF Nos. 72 and 97.  Neither documents however contain the passage Defendant Holloway is claiming.

response, even if Plaintiff attempted to defend her claim as a loss of consortium cause of action with her children, it would likely fall into the category of "alienation of affection."  However, to successfully demonstrate her claim, she would be required to show  "(1) the existence of a family relationship, (2) a wrongful interference with the relationship by a third person, (3) an intention on the part of the third person that such wrongful interference results in a loss of affection or family association, (4) a causal connection between the third parties' conduct and the loss of affection, and (5) that such conduct resulted in damages." *Waller v. State*, 64 Wash. App. 318, 338 (1992) (citing *Strode v. Gleason*, 9 Wash. App. 13, 14–15 (1973)).  Without an answer from Plaintiff in response demonstrating the elements for alienation of affection, her claim is untenable and Defendant Holloway is entitled to summary judgment.

## V.    Civil Conspiracy

Plaintiff also fails to provide an answer to Defendant Holloway's motion for summary judgment regarding her civil conspiracy claim.  As such, the claim is dismissed for failure to carry the burden of creating a material fact for the jury to consider.  *Liberty Lobby, Inc.*, 477 U.S. at 256.

## VI.    Evidence of Damages

Lastly, Defendant Holloway contends that there is no proof he is the proximate or actual cause of Plaintiff's injury.  ECF No. 70 at 15.  However, he

seemingly abandons the argument, as it appears nowhere in the Reply.  Plaintiff

argues she has produced evidence from her own expert witness that Defendant

Holloway caused her injury, and that his expert stated that their interactions

"contributed to" a diagnosis of PTSD.  ECF No. 85 at 19.  Damages related to a

§ 1983 claim must demonstrate that a defendant's actions were both the actual and

proximate cause of a plaintiff's injury.  *Leer,* 844 F.2d at 634.  To show actual

cause, a plaintiff must show that the injury would not have occurred "but for" the

conduct.  *White v. Roper*, 901 F.2d 1501, 1505 (9th Cir. 1990).  However, the

conduct need not be *the* but for cause, and instead may be *one* but for cause of the

injury.  *Black v. Grant Cnty. Pub. Util. Dist.*, 820 F. App'x 547, 551–52 (9th Cir.

2020) (emphasis added).  Here, Plaintiff's expert asserts that her interactions with

Defendant Holloway contributed to her decline in mental health.  ECF No. 89-2 at

28–29.  Proximate cause is an inquiry which is centered on whether the defendant

should be legally responsible for the injury.  *White*, 901 F.2d at 1506 (internal

citations omitted).  Typically, this is assessed through a discussion of whether the

injury was a foreseeable risk of the conduct and is usually reserved for the jury.  *Id*.

As such, a genuine issue of fact remains as to whether Defendant Holloway may be

held responsible for further exacerbating Plaintiff's mental health, and summary

judgment is not proper.

//

ORDER GRANTING IN PART DEFENDANT ISAIAH HOLLOWAY'S
MOTION FOR SUMMARY JUDGMENT~ 32

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Defendant Isaiah Holloway's Motion for Summary Judgment (ECF No. 70) is **GRANTED in part.**

2. Plaintiff's Fourth Amendment claim under 42 U.S.C. § 1983 is **DISMISSED.**

3. Plaintiff's Fourteenth Amendment claims for violations of procedural and substantive due process are **DISMISSED**.

4. Plaintiff's claims for civil conspiracy and loss of consortium are **DISMISSED**.

5. Summary Judgment is not proper as to Plaintiff's Fourteenth Amendment equal protection and Washington Law Against Discrimination claims.

The District Court Executive is directed to enter this Order and furnish copies to counsel.

DATED August 8, 2024.



THOMAS O. RICE
United States District Judge

ORDER GRANTING IN PART DEFENDANT ISAIAH HOLLOWAY'S
MOTION FOR SUMMARY JUDGMENT~ 33