FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 04, 2026

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| VANESSA VELASCO ORTEGA, an individual,<br><br>                          Plaintiff,<br><br>     v.<br><br>OKANOGAN COUNTY, WASHINGTON, a municipal corporation; OKANOGAN COUNTY SHERIFF'S OFFICE; ISAIAH HOLLOWAY, an individual and employee of the OKANOGAN COUNTY SHERIFF'S OFFICE,<br>                          Defendants. | NO. 2:22-CV-0195-TOR<br><br>ORDER ON MOTIONS FOR SUMMARY JUDGMENT |

BEFORE THE COURT are Plaintiff's Motion for Summary Judgment Against Defendant Okanogan County (ECF No. 158), Plaintiff's Motion for Summary Judgment Against Defendant Holloway (ECF No. 161), and Defendant Okanogan County's Motion for Summary Judgment (ECF No. 166). These matters were considered without oral argument. The Court has reviewed the record and files herein and is fully informed. For the reasons discussed below,

ORDER ON MOTIONS FOR SUMMARY JUDGMENT ~ 1

Plaintiff's Motion for Summary Judgment as to Defendant Okanogan County is **GRANTED in part**, Plaintiff's Motion for Summary Judgment as to Defendant Holloway is **DENIED**, and Defendant Okanogan County's Motion for Summary Judgment is **GRANTED in part**.

## BACKGROUND

This matter arises out an alleged *quid pro quo* relationship between Plaintiff and Defendant Holloway. The Court's August 8, 2024 Order provides a detailed background of the case. ECF No. 113 at 2-4. To summarize, Defendant Holloway was a deputy, and later a detective, with the Okanogan County Sheriff's Office ("OCSO"). *Id.* at 2. Defendant Holloway and Plaintiff had prolonged contact based on Plaintiff's involvement with criminal activity, including her active addiction to drugs for most of the alleged relationship. Eventually the two began a sexual relationship in 2019, that lasted until late 2020. Plaintiff alleges that two of their sexual encounters occurred at Bud Clark field while Defendant Holloway had been on duty. *Id.* at 3. Plaintiff also alleges that over the course of the relationship Defendant Holloway provided Plaintiff tips with how to avoid law enforcement while she was engaged in criminal activity. *Id.* at 2-3.

In 2020, Plaintiff's brother reported to OCSO that Plaintiff and Defendant Holloway had been engaging in an inappropriate relationship which resulted in Defendant Holloway being disciplined. *Id.* at 4. However, Plaintiff maintains that

ORDER ON MOTIONS FOR SUMMARY JUDGMENT ~ 2

even after being disciplined, Defendant Holloway carried on the sexual nature of their relationship through a Facebook profile. *Id.* Plaintiff alleges that during these encounters, she was an active user of methamphetamine, thereby unable to consent, and coerced through a promise of leniency related to criminal activity she was allegedly involved in. *Id.*

Plaintiff file this action on September 2, 2022, bringing state and federal law claims against Defendant Holloway and Okanogan County (the "County"). ECF No. 1. Defendant Holloway moved for summary judgment in June 2024 arguing that summary judgment was proper because he was not acting under the color of state law when the acts were committed, and even if he were, he is shielded by qualified immunity. ECF No. 70 at 3. The Court partially granted Holloway's motion and dismissed Plaintiff's Fourth and Fourteenth Amendment claims for due process on qualified immunity grounds but concluded issues of fact remained as to whether Holloway was shielded by qualified immunity from Plaintiff's Fourteenth Amendment equal protection claim. ECF No. 113 at 33. Defendant Holloway filed an interlocutory appeal of the Court's decision, and Plaintiff cross-appealed. ECF Nos. 115, 145. The case was stayed pending the Ninth Circuit's decision. ECF No. 143.

On August 28, 2025, the Ninth Circuit affirmed the Court's determination as to the equal protection claim concluding "[t]here is ample evidence that Holloway

ORDER ON MOTIONS FOR SUMMARY JUDGMENT ~ 3

abused his authority to make unwanted advances and sexually coerce a woman whom he knew to be a drug addict." *Velasco Ortega v. Holloway*, No. 24-4930, 2025 WL 2477160, at *3 (9th Cir. Aug. 28, 2025). The Ninth Circuit dismissed Plaintiff's cross-appeal.

The stay in this action was lifted on September 5, 2025. ECF No. 152. Plaintiff now moves for summary judgment as to Defendant Holloway and Okanogan County. ECF Nos. 158, 161. Okanogan County also moves for summary judgment. ECF No. 166. [1]

## SUMMARY JUDGMENT

The Court may grant summary judgment in favor of a moving party who

---

[1] The Court acknowledges that Plaintiff has recently filed a motion to continue the trial date, reopen discovery, and continue the Court's consideration of the parties' summary judgment motions based on new evidence that has come to light. ECF No. 214. Upon reviewing the motion and declarations in support, the Court concludes that any newly discovered evidence is unlikely to alter the Court's summary judgment findings as stated herein even if Plaintiff's request for a continuance and a reopening of discovery is granted. Therefore, the Court declines to continue consideration of the parties' motions. Plaintiff's motion to continue will be addressed in a separate order.

ORDER ON MOTIONS FOR SUMMARY JUDGMENT ~ 4

demonstrates "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, the court must only consider admissible evidence. *Orr v. Bank of America*, NT & SA, 285 F.3d 764, 773 (9th Cir. 2002). The party moving for summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to identify specific facts showing there is a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id*. at 252.

For purposes of summary judgment, a fact is "material" if it might affect the outcome of the suit under the governing law. *Id*. at 248. Further, a dispute is "genuine" only where the evidence is such that a reasonable jury could find in favor of the non-moving party. *Id*. The Court views the facts, and all rational inferences therefrom, in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). Summary judgment will thus be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

ORDER ON MOTIONS FOR SUMMARY JUDGMENT ~ 5

## I.   Okanogan County

Plaintiff brings claims against the County for violations under the Washington Law Against Discrimination ("WLAD") and 42 U.S.C. § 1983 and asserts other state law claims of negligent supervision and retention, loss of consortium, and civil conspiracy.  ECF No. 1 at ¶¶ 164-205.

### A. Washington Law Against Discrimination

Both Plaintiff and the County move for summary judgment on Plaintiff's WLAD public accommodation discrimination claim.  ECF Nos. 158 at 5-6, 166 at 7-11.

The WLAD prohibits "any person or the person's agent or employee [from committing] an act which directly or indirectly results in any distinction, restriction, or discrimination" based on a person's membership in a protected class.  RCW 49.60.215.  To establish a claim under RCW 49.60.215 in a place of public accommodation, a plaintiff must show:

> (1) the plaintiff is a member of a protected class, (2) the defendant's establishment is a place of public accommodation, (3) the defendant discriminated against the plaintiff when it did not treat the plaintiff in a manner comparable to the treatment it provides to persons outside that class, and (4) the plaintiff's protected status was a substantial factor that caused the discrimination.

*Fell v. Spokane Transit Authority*, 128 Wash.2d 618, 637 (1996). Factors one through three are a mixed question of fact and law, and the fourth

ORDER ON MOTIONS FOR SUMMARY JUDGMENT ~ 6

factor is purely a question of fact. *Id.* The parties do not dispute that Plaintiff is a member of a protected class based on her gender.

### 1. Public Accommodation

The County argues that Plaintiff's WLAD claim as to the County fails because she cannot establish Defendant Holloway's conduct occurred at an Okanogan County place of public accommodation. ECF No. 166 at 7. The Court disagrees.

The Court previously concluded that Bud Clark Field is a public park, falling under "any place of public . . . amusement." ECF No. 113 at 28; RCW 49.60.040(2), (28); *see also Fell*, at 638 n.24 (noting public accommodations include restaurants, parks and public resorts). RCW 49.60.215 "makes it unlawful for 'any person or the persons' agent or employee to commit an act [of] discrimination . . . in any place of public . . . accommodation.'" *Floeting v. Group Health Cooperative*, 192 Wash. 2d 848, 857 (2019) (quoting RCW 49.60.215). The Washington Supreme Court in *Floeting* highlighted the lower court's reasoning that "the legislature chose to fight discrimination in public accommodations by making employers directly responsible for their agents' and employees' conduct." *Id.* at 856 (quoting *Floeting v. Grp. Health Coop.*, 200 Wash. App. 758, 770 (2017)). Nothing in the provision's plain language supports the County's interpretation that there is an extra requirement that the public

ORDER ON MOTIONS FOR SUMMARY JUDGMENT ~ 7

accommodation where the discrimination occurred must be owned by the agent or employee's employer for the employer to be liable under the WLAD.  Rather, RCW 49.60.215 imposes strict liability on employers for the discriminatory conduct of their employees.  *Id.* at 859.

The County's argument relies heavily on the lower *Floeting* court's language, "by imposing direct liability on business proprietors for the action of their employees/agents, the legislation serves its purpose.  Direct liability makes the proprietor liable for all acts of sexual harassment occurring on its premises— including the first." *Floeting*, 192 Wash. App. at 565.  The County argues that the same reasoning applies to public parks, therefore the County cannot be held liable under WLAD because it does not own or operate Bud Field Park.  ECF No. 166 at 10.  This argument misses the mark.  *Floeting* was addressing the scope of liability of a proprietor of a place of public accommodation for an alleged sexual harassment by an employee, not employer liability in general.  *Id.* at 863 ("While we have decided cases that involve sexual harassment in the workplace and *discrimination in places of public accommodation*, we have not had occasion to determine what legal standard is appropriate for imposing liability on a proprietor of a place of public accommodation for alleged sexual harassment by a nonsupervisory employee.") (emphasis added).  The court ultimately concluded that "when the 'person' referenced in the statute is a business proprietor, that

ORDER ON MOTIONS FOR SUMMARY JUDGMENT ~ 8

'person' is directly liable for its own unfair practices and the unfair practices of its agents and employees." *Id.*

A proprietor is but one type of "person" under the WLAD.  RCW 49.60.040 defines "person" to include:

> one or more individuals, partnerships, associations, organizations, corporations, cooperatives, legal representatives, trustees and receivers, or any group of persons; it includes any owner, lessee, proprietor, manager, agent, or employee, whether one or more natural persons; and further includes any political or civil subdivisions of the state and any agency or instrumentality of the state or of any political or civil subdivision thereof.

RCW 49.60.040.

And RCW 49.60.215 clearly states that discrimination is prohibited by "any person or the *persons' agent or employee*" in "any" place of public accommodation. There is no ownership requirement.  Furthermore, the Court already concluded, and Defendant Holloway concedes, that Bud Park Field is a place of accommodation for purposes of Plaintiff's WLAD claim brought against him. ECF No. 175 at 15.  The County does not dispute that Defendant Holloway was its agent or employee.  It therefore follows by the plain language of the statute that the County may be liable for Defendant Holloway's conduct if he is found to have violated the WLAD.  To conclude otherwise renders the statute's language meaningless.

The Court concludes the second element of Plaintiff's WLAD claim against

ORDER ON MOTIONS FOR SUMMARY JUDGMENT ~ 9

the County is met.  Bud Clark Field is a place of public accommodation as defined under RCW 49.60.40. The County's ownership, or lack thereof, is irrelevant.

### 2. *Defendant Holloway's discrimination against Plaintiff*

Plaintiff argues that the County, through Defendant Holloway's conduct, discriminated against Plaintiff in violation of WLAD as a matter of law.  ECF No. 158 at 6-8.

Plaintiff alleges Defendant Holloway discriminated against Plaintiff through sexual harassment.  ECF Nos. 183 at 5.  "Sexual harassment is a form of sex discrimination, which we analyze like other forms of discrimination in places of public accommodation." *Floeting,* 192 Wash. 2d at 853.  The discriminatory conduct must be objectively discriminatory, that is, "it must be of a type, or to a degree, that a reasonable person who is a member of the plaintiff's class, under the circumstances, would feel discriminated against." *Id.* at 858 (quoting *Floeting*, 200 Wash. App. at 773-774).  A single discriminatory act in a place of public accommodation may violate WLAD.  *Id.* at 853.

It is undisputed that Defendant Holloway was the County's employee, therefore the WLAD imposes strict liability on the County for sexual harassment by Defendant Holloway.  The question then is whether there is any genuine issue of fact that Defendant Holloway discriminated against Plaintiff through sexual harassment.  Plaintiff argues that Defendant Holloway's undisputed acts of sexual

ORDER ON MOTIONS FOR SUMMARY JUDGMENT ~ 10

misconduct with Plaintiff constitutes sexual discrimination as a matter of law. ECF No. 158 at 6-8. Plaintiff points to the County's investigation and reprimand of Defendant Holloway for his illicit sexual relationship with Plaintiff (ECF No. 90-17), Defendant Holloway's admittance that his conduct violated OCSO's policies (ECF No. 159 at ¶ 32), and undisputed facts demonstrating OCSO policy violations. *Id.* at 6-8. Plaintiff argues this evidence of sexual misconduct warrants summary judgment on her WLAD claim. ECF No. at 8 (citing *W.H. v. Olympia Sch. Dist.*, 193 Wash. 2d 779, 792 (2020)). The Court disagrees.

The *W.H.* court reasoned that sexual misconduct such as sexual harassment, abuse and assault is what constituted sex discrimination under the WLAD. *W.H.*, 193 Wash. 2d at 792-93. Thus, whether Defendant Holloway's sexual relationship with Plaintiff was misconduct under OCSO's policies does not conclusively establish that Defendant Holloway sexually discriminated against Plaintiff for summary judgment purposes. Furthermore, as the Court previously concluded, there is a genuine issue of fact as to whether Plaintiff consented to the relationship with Defendant Holloway. ECF No. 113 at 14-15. Plaintiff argues that consent is not a valid defense under WLAD, citing the lack of a consent defense in *Floeting* and rejection of a consent defense in *A.S. v. Provail*, 36 Wash. App. 2d 34 (2025). The Court again disagrees.

First, the *Floeting* court identified a non-exhaustive list of possible defenses

ORDER ON MOTIONS FOR SUMMARY JUDGMENT ~ 11

available to an employer under the WLAD including the argument that "the discrimination did not happen at all, that it did not meet the objective or subjective standards required by the statute and therefore was not an unfair practice, or that the person who committed the discrimination was not its agent or employee." *Floeting*, 192 Wash. 2d at 861.  The absence of consent as a listed defense is therefore not dispositive of the issue.  As for *Provail*, the court's holding there actually suggests consent can be an available defense.  In that case, the defendant was a charitable organization that provided supported living services to residents with developmental disabilities.  *Provail*, 36 Wash. App. 2d at 36.  The plaintiff, born with spastic quadriplegic cerebral palsy and receiving the defendant's services, brought a sex discrimination claim under the WLAD claim against the defendant alleging one of the defendant's employees had sex with the plaintiff.  *Id.* at 38.  The defendant pointed to evidence suggesting the plaintiff had consented to the sexual contact and argued the consent negated a claim of sexual discrimination under the WLAD.  *Id.* at 55.  The court disagreed and concluded that WLAD liability existed regardless of consent because the "sexual contact with [the plaintiff] was defined as sexual abuse by law" due to her status as a vulnerable adult.  *Id.* at 57.  She was therefore by law incapable of consenting.  *Id.*  The court did not conclude that consent was never available as a defense to a WLAD claim.

Similarly, in *Christensen v. Royal School District No. 160*, 156 Wash. 2d 62,

ORDER ON MOTIONS FOR SUMMARY JUDGMENT ~ 12

67 (2005), a school district attempted to assert a consent defense where a thirteen year old student willingly engaged in sexual activity with her adult teacher. *Id.* at 65-66. The court rejected this argument, concluding that the state legislature rejected the idea that a minor can consent to sexual activity with an adult by adopting statutes making it a felony for an adult to engage in sexual activity with a minor, regardless of whether the minor "consented." *Id.* at 67-68. Therefore, a consent defense was not available to the district. *Id.* at 68. Based on this case law, and the absence of any that state or suggest consent is never an available defense under the WLAD, the Court is inclined to conclude that consent may be an available defense depending on the case.

Here, Plaintiff has previously pointed to Washington State drug and alcohol consent laws in arguing that she was incapable of giving consent to sexual activity due to her drug addiction during the relationship. ECF No. 85 at 13. And as the Court previously concluded, this combined with other evidence created an issue of fact as to whether Plaintiff did consent or was even capable of giving consent given her drug addiction during the relationship. ECF No. 113 at 14-15. Therefore, whether Defendant Holloway discriminated against Plaintiff on the basis of sex and whether Plaintiff's sex was a substantial factor that caused the discrimination must be left up to the jury.

//

ORDER ON MOTIONS FOR SUMMARY JUDGMENT ~ 13

**B.** *Monell* **Claims**

To prevail on a claim under 42 U.S.C. § 1983 against a local government entity, a plaintiff must prove that the entity violated his or her constitutional rights by engaging in "action pursuant to official municipal policy of some nature." *Monell v. Dep't. Soc. Servs.*, 436 U.S. 658, 691 (1978). In the Ninth Circuit, a plaintiff may establish the existence of an "official municipal policy" under any of the following theories: (1) action pursuant to an express policy or longstanding practice or custom; (2) action by a final policymaker acting in his or her official policymaking capacity; (3) ratification of an employee's action by a final policymaker; and (4) a failure to adequately train employees with deliberate indifference to the consequences. *Christie v. Iopa*, 176 F.3d 1231, 1235-40 (9th Cir. 1999); *see also* Ninth Circuit Model Civil Jury Instructions, Nos. 9.4-9.7.

Plaintiff argues the County is liable for Defendant Holloway's violations of Plaintiff's constitutional rights under three separate *Monell* theories: the County's custom of turning a blind eye to its officers' sexual misconduct with women involved in drugs and crime; the County's failure to train and supervise its employees; and the County's ratification of Defendant Holloway's misconduct with Plaintiff. ECF No. 158 at 16.

### 1. Custom of turning a blind eye

"[A]n act performed pursuant to a 'custom' that has not been formally

ORDER ON MOTIONS FOR SUMMARY JUDGMENT ~ 14

approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997) (citation omitted). A custom or policy may be inferred from evidence of a failure to investigate, discharge or reprimand officers for repeated instances of unconstitutional conduct. *Hunter v. Cnty. of Sacramento*, 652 F.3d 1225, 1233 (9th Cir. 2011). Whether a custom or policy exists is normally a jury question. *Trevino v. Gates*, 99 F.3d 911, 920 (9th Cir. 1996).

Plaintiff argues that the County failed to record, respond, or investigate allegations of sexual misconduct made against Defendant Holloway and other deputies. ECF No. 158 at 17. Defendant argues that Plaintiff presents no evidence that OSCO had knowledge of deputies committing repeated constitutional violations and ignored them. ECF No. 166 at 13-14. The Court concludes Plaintiff has presented sufficient evidence to support a *Monell* claim that Plaintiff's alleged constitutional deprivation was caused by OSCO's policy or custom of turning a blind eye to Defendant Holloway's long-standing repeated sexual misconduct, and other deputy misconduct, with women known to be involved with drugs and crime. However, the issue must ultimately go to a trier of fact.

First, Defendant Holloway admitted to having a sexual relationship with Christina St. Clair ("St. Clair"), a known informant and drug user, in 2017 and

ORDER ON MOTIONS FOR SUMMARY JUDGMENT ~ 15

2019.  ECF No. 90-3 at 17-18.  The County denies it had knowledge of the relationship, however, in 2014 OSCO received a call from St. Clair's uncle complaining that Defendant Holloway was "found . . . with his pants off and was pulling his pants back on" next to St. Clair.  ECF No. 67-3.  While Defendant Holloway denied anything inappropriate happened and that he was only performing off-duty work (ECF No. 94-7 at 10-11), St. Clair testified that the two had been having sex just prior to the call.  ECF No. 90-4 at 6-8.  The investigating officer, Chief Criminal Deputy Rodriguez ("Deputy Rodriguez"), admitted that he did not review the call log or investigate further but rather concluded Defendant Holloway had been there for work purposes.  ECF No. 80-3 at 11-12.  He further conceded that it would have been handled differently had he known of the allegation that Defendant Holloway's pants had been off.  *Id.*  No documentation regarding the incident was kept.  *Id.* at 10-11.

Next, sometime between 2013 and 2018, Noah Stewart ("Deputy Steward"), the former Chief Corrections Deputy for OCSO heard a rumor through staff members that Defendant Holloway "let some woman off of a crime that lived in northern part of Okanogan County because he was having a sexual relationship with her."  ECF No. 112-7 at 7-8.  The allegations were never investigated.  ECF No. 112-11 at 10.  During the same time frame, another complaint was filed against Defendant Holloway by a man complaining that Defendant Holloway had

ORDER ON MOTIONS FOR SUMMARY JUDGMENT ~ 16

been outside his house hugging his daughter. ECF No. 159 at ¶ 2(a). Defendant Holloway claimed he was only getting information from her. ECF No. 112-4 at 8. The father was never questioned and no further investigation occurred. *Id.* at 9. The actual complaint and any related documentation has not been located despite confirmation that they would have been in writing. *Id.* at 9-11.

Next, sometime after June 2020, Aaron Culp ("Undersheriff Culp"), Undersheriff for the OCSO heard from the human resources director that there was a report that Defendant Holloway had previously had a sexual relationship with Morningstar St. Peter ("St. Peter") who was a drug user and known criminal. ECF Nos. 159 at ¶ 7(a); 112-8 at 19. Undersheriff Culp testified that no investigation occurred and neither Ms. St. Peter nor the reporting individual were ever contacted about the allegation. ECF Nos. 159 at ¶ 7(a); 112-8 at 19.

In 2015, OCSO was made aware of an allegation that another deputy, Deputy Weigel, became involved with a known drug user and criminal, Stacy Rodriguez ("Ms. Rodriguez"), after he arrested her for drug related charges. ECF No. 159 at ¶ 4. Chief Deputy Brown ("Deputy Brown"), who investigated the allegation, testified that Deputy Weigel had recommended Ms. Rodriguez for drug court, "which is basically like diversion," and a complaint later came in that Deputy Weigel was seen picking up Ms. Rodriguez, and the two went to a wedding together. ECF No. 112-4 at 20-21. Deputy Weigel later admitted to giving Ms.

ORDER ON MOTIONS FOR SUMMARY JUDGMENT ~ 17

Rodriguez a ride to a wedding but denied the two had a relationship. *Id.* Deputy Brown testified that he believed Deputy Weigel's behavior to be inappropriate and a policy violation and claimed he reprimanded Deputy Weigel for it (ECF No. 112-4 at 23), yet Deputy Weigel testified that he never received any sort of reprimand or discussion from Deputy Brown that the behavior was inappropriate. ECF No. 112-6 at 11. Deputy Brown also acknowledged that the proper course of conduct would have been to question Ms. Rodriguez about the allegation, but could not recall if he ever did, and no records of the complaint or any investigation have been located. ECF No. 112-4 at 24.

Plaintiff additionally points to the County's failure to investigate Defendant Holloway in response to the two complaints related to the alleged sexual relationship between Defendant Holloway and another drug user and criminal Maddesyn George ("Ms. George") in 2018. ECF Nos. 158 at 18, 112-16, 112-17. Defendant argues that one report was unsubstantiated hearsay and the other was not submitted until after the Velasco Ortega investigation began. ECF No. 174 at 12. However, the investigating deputy, Deputy Weigel, admitted to never questioning Defendant Holloway about the allegations or another individual reported to have potential information. ECF No. 112-6 at 29, 31-32.

Finally, after OSCO received the complaint regarding Defendant Holloway's conduct with Plaintiff, no investigation occurred for two months even though

ORDER ON MOTIONS FOR SUMMARY JUDGMENT ~ 18

Defendant Holloway had messaged Chief Wright the day after the complaint was filed confessing that he had fallen "into a world of porn addiction, sexting and now an affair." ECF Nos. 90-15, 112-10 at 12. Even after Defendant Holloway admitted to having a sexual relationship with Plaintiff, neither his nor Plaintiff's phone was ever examined despite a report that Plaintiff's phone had evidence that Defendant Holloway had been messaging Plaintiff advice on how to get away with crimes. ECF No. 112-10 at 13, 15-16.

"Evidence of 'identical incident[s]' to that alleged by the plaintiff may establish that a municipality was put on notice of its agents' unconstitutional actions." *Velazquez*, 793 F.3d 1010, 1027 (9th Cir. 2015). There is sufficient evidence for a jury to determine that the County was put on notice of its deputies' alleged unconstitutional conduct but repeatedly failed to investigate, document, or reprimand. Defendant argues that for most of the reports, Plaintiff cannot demonstrate that any sexual activity actually occurred or that there was a constitutional violation. ECF No. 166 at 13. The Court disagrees. First, Plaintiff has presented evidence that creates an issue of fact as to whether some of the reported sexual misconduct actually occurred. And second, "[t]he court need not conclude that each prior incident was itself a constitutional violation in order to conclude that the [County] was on notice of the behavior that led to a violation of [Plaintiff's] constitutional rights." *Paredes v. City of San José*, 760 F. Supp. 3d

ORDER ON MOTIONS FOR SUMMARY JUDGMENT ~ 19

902, 925 (N.D. Cal. 2024).

As for causation, evidence of a department's treatment of complaints or failure to take any remedial steps in response can support a plaintiff's theory that the department's complaint and disciplinary process contributed to police conduct "complained of because the procedures made clear to [the] officer that . . . [he] could get away with anything." *Larez v. City of L.A.*, 946 F.2d 630, 646-47 (9th Cir. 1991). Here, Plaintiff presents evidence of OSCO's custom of repeatedly failing to investigate or reprimand its deputies for instances of alleged sexual misconduct. And the jury could find that the County's custom was a driving force behind Plaintiff's alleged injury because its lack of oversight of OSCO deputies allowed Defendant Holloway to engage with Plaintiff without fear of punishment. Therefore, Plaintiff's *Monell* claim under the custom theory will go to a jury.

*2. Failure to train or supervise*

The County may be liable on a failure to train or supervise theory when "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers . . . can be said to have been deliberately indifferent to the need." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). "Where a § 1983 plaintiff can establish that the facts available to city policymakers put them on actual *or constructive notice* that the

ORDER ON MOTIONS FOR SUMMARY JUDGMENT ~ 20

particular omission is substantially certain to result in the violation of the constitutional rights of their citizens, the dictates of *Monell* are satisfied." *City of Canton v. Harris*, 489 U.S. 378, 396 (1989).

Plaintiff presents evidence that OCSO had a pattern of failing to investigate allegations made against its deputies and gave little to no discipline even where OCSO concluded misconduct occurred. There is also ample evidence that OCSO failed to document complaints, investigations, and reprimands, if any, that occurred. Additionally, in 2019, the Loaned Executive Management Assistance Program ("LEMAP") conducted a review of OCSO's policies and issued a report with findings and recommendations (the "Report"). ECF No. 112-15. The Report indicated that OCSO's policy manual "is outdated and is largely ignored by OCSO employees." *Id.* at 5. The Report also reported deficient records management.

> There is no uniform records management philosophy, policy, or plan in place at OCSO. Records by the previous administration were destroyed and many of those would have still had retention value. The office does not have a records index and has not identified which records are essential, permanent, or have a retention value. Many types of investigation, personnel, CEO, and policy records have been destroyed throughout the agency with no authority or documentation. Some records, such as police reports, are commonly destroyed and logged without the recommended information such as the Disposition Authority Number (DAN) which designates the legal authority to destroy the record. Nor is there documentation of how the record was destroyed, when the record was destroyed, or who destroyed it.

*Id.* at 11.

ORDER ON MOTIONS FOR SUMMARY JUDGMENT ~ 21

The Report also noted that complaints were not all being documented, and the OSCO's own policy that all complaints against its members would be investigated was "open to interpretation." ECF No. 112-15 at 19. Further, OSCO retained letters of reprimand for only one year while the requirement was six, "regardless of whether or not the complaint was sustained or if discipline was imposed." *Id.* at 23. Finally, the Report states that "OCSO has never conducted a review or analysis of critical incidents (pursuits, use of force, bias based policing and internal affairs investigations)[,]" and explained such reviews are "critically important" because among other reasons, "an analytical review requires higher levels of the organization to be aware of risky behavior by deputies which can be addressed." *Id.* at 8. The evidence related to OSCO's response and handling of repeated allegations of deputy misconduct and the LEMPA Report support a finding that OSCO deputies were not adequately trained or supervised.

The Court concludes there is sufficient evidence for a jury to find that the need for training and the lack of supervision of OSCO's employees and deputies was so obvious and a resulting constitutional violation so likely as to constitute deliberate indifference. Similarly, there is sufficient evidence to support Plaintiff's claim that the failure to train/supervise was the "moving force" behind the alleged constitutional violation and Plaintiff was a foreseeable victim. A jury could find the OSCO's failure to investigate, document or preserve repeated complaints and

allegations prevented Defendant from being identified as a risk and allowed him to target Plaintiff with little to no fear of any consequences.

Plaintiff argues that summary judgment should be granted in her favor, however, questions of fact remain as to whether Plaintiff's constitutional rights were violated.  In any event, the Court finds that it is appropriate for the jury to decide if the County's failure to train amounted to deliberate indifference and was the moving force behind the alleged constitutional violation.

### 3. Ratification

Plaintiff argues that the County ratified Defendant Holloway's misconduct by appointing Defendant Holloway as a detective prior to investigating the sexual misconduct allegations against him.  ECF No. 158 at 20-21.  Plaintiff argues that Chief Wright and Sheriff Hawley, a policymaker for OCSO appointed Defendant Holloway as detective above other candidates prior to investigating the pending allegations involving Plaintiff and permitted him to keep the position once the allegations were verified.  ECF No. 158 at 20-21.  The detective position came with a three percent stipend for on-call availability and a clothing allowance for duty-appropriate clothing.  ECF No. 160-2 at 5-6.

Plaintiff may establish § 1983 liability by proving "that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it." *Gillette v. Delmore*, 979 F.2d 1342, 1346-47 (9th Cir. 1992).

ORDER ON MOTIONS FOR SUMMARY JUDGMENT ~ 23

Liability under the ratification doctrine is distinct from other *Monell* liability generally in that it "is based on a municipal policymaker's decision that occurs after the constitutional deprivation and endorses a subordinate's conduct causing the injury." *Tubar v. Clift*, No. C05-1154-JCC, 2008 WL 5142932, at *5 (W.D. Wash. Dec. 5, 2008). An official has final policy-making authority where "the official's discretionary decision is [not] 'constrained by policies not of that official's making' and . . . [not] 'subject to review by the municipality's authorized policymakers.'" *Christie v. Iopa*, 176 F.3d 1231, 1236-37 (9th Cir. 1999) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)). "To show ratification, a plaintiff must show that the 'authorized policymakers approve a subordinate's decision and the basis for it.'" *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004) (citation omitted); *see also Haugen v. Brosseau*, 339 F.3d 857 (9th Cir. 2003) ("[T]he plaintiff must show that the triggering decision was the product of a 'conscious, affirmative choice' to ratify the conduct in question.") (citation omitted).

Here, the County does not dispute that Sheriff Hawley was "the ultimate authority on all policy changes" (ECF No. 160-2 at 2), and Chief Criminal Deputy Laura Wright ("Chief Wright") and Sheriff Hawley had the final say in Defendant Holloway's appointment to detective. ECF Nos. 159 at ¶ 21, 174 at ¶ 21. Rather, the County argues that an appointment to detective is not a promotion or privilege

ORDER ON MOTIONS FOR SUMMARY JUDGMENT ~ 24

but rather a lateral move in police organizations.  ECF No. 166 at 17.  The County further argues that Defendant Holloway was given a written reprimand for his conduct with Plaintiff and placed on probation through a deferred unpaid suspension.  ECF No. 172 at 15-16.  Plaintiff replies that the alleged misconduct did not prevent Defendant Holloway from returning to work or being appointed detective, nor did he lose his job as detective after the misconduct was verified.  ECF No. 183 at 10-11.

Whether Defendant Holloway's appointment as detective constituted a promotion appears to be disputed as Defendant Holloway admitted in his Answer to Plaintiff's Complaint that he was promoted within the OSCO.  ECF No. 12 at ¶ 110.  However, even if a jury could find the appointment was a promotion, it alone is insufficient to demonstrate ratification "absent some facts from which it can be inferred that the entity's final policymaker actually had knowledge of and approved of the purportedly unconstitutional conduct."  *Bennet v. Cty of Shasta*, No. 2:15-CV-01764-MCE-CMK, 2017 WL 3394128, at *4 (C.D. Cal. Aug. 8, 2017); *see also Gavin v. City of Los Angeles*, 2:05-CV-09001-FMC-SSx, 2007 WL 9706236, at *11 (C.D. Cal. Aug. 8, 2007) ("[T]he fact that individuals involved in the allegedly unconstitutional acts received promotions is not sufficient evidence to demonstrate that the individuals who promoted them ratified the unconstitutional activity."); *Dizon v. City of S. San Francisco*, No. 18-CV-03733-JST, 2018 WL

ORDER ON MOTIONS FOR SUMMARY JUDGMENT ~ 25

5023354, at *5 (N.D. Cal. Oct. 16, 2018) ("Failure to discipline alone is insufficient to state a claim under a ratification theory . . . . Nor is it sufficient that officers may have been promoted after the fact."). In this case, the Court concludes Plaintiff has not demonstrated sufficient evidence to support *Monell* liability under the ratification doctrine.

Chief Wright investigated the allegations of sexual misconduct against Defendant Holloway related to Plaintiff. ECF No. 112-10 at 7-8. Nearly two months after the initial complaint came in, Chief Wright appointed Defendant Holloway as a detective. ECF Nos. 90-6 at 4. Chief Wright testified that up until that point, no investigation of Defendant Holloway had occurred and only after he was appointed as detective did he confess his sexual relationship with Plaintiff. ECF No. 112-10 at 12-14. Chief Wright also testified that she was only aware of one previous allegation made against Defendant Holloway prior to her working at OSCO but that no documentation was kept or located. *Id.* at 7, 10. Thus, whether Chief Wright had actual knowledge of Defendant Holloway's unconstitutional conduct at the time of his appointment may be disputed, but assuming she did for summary judgment purposes, the evidence does not support an inference that the Defendant Holloway's appointment to detective was a deliberate choice to endorse his conduct or the basis for it. Although the evidence could support Plaintiff's argument of deliberate indifference. Similarly, the Court does not find the facts

ORDER ON MOTIONS FOR SUMMARY JUDGMENT ~ 26

surrounding Defendant Holloway retaining his position as detective after he admitted to his sexual misconduct with Plaintiff or Sheriff Hawley's decision to permit Defendant Holloway to return to work in April 2020 demonstrate that either Chief Wright or Sheriff Hawley had knowledge of *and approved of* Defendant Holloway's conduct and the basis for it.  Therefore, Plaintiff's *Monell* claim under the ratification theory fails.

### C. Negligent Supervision and Retention of Defendant Holloway

Under Washington law, employers have "a limited duty to control an employee for the protection of third parties, even where the employee is acting outside the scope of employment." *Niece v. Elmview Group Home*, 131 Wash. 2d 39, 51 (1997).  An employer may be liable for negligent supervision where: (1) an employee acted outside the scope of his employment; (2) the employee presented a risk of harm to others; (3) the employer knew, or should have known in the exercise of reasonable care that the employee posed a risk to others; and (4) that the employer's failure to supervise was the proximate cause of injuries to other employees." *Briggs v. Nova Servs.*, 135 Wash. App. 955, 966-67 (2006).

The parties agree that Defendant Holloway's sexual relationship with Plaintiff was not in the course and scope of his employment.  ECF Nos. 158 at 11, 13 at ¶ 86.  The first element is therefore met.  Plaintiff has presented evidence supporting the remaining elements of a negligent supervision claim, but whether

ORDER ON MOTIONS FOR SUMMARY JUDGMENT ~ 27

they have been met ultimately must go to the jury for similar reasons previously discussed.  First, while there is evidence of repeated reports of Defendant Holloway pursuing and having sexual relationships with women whom he met through the course of his duties, the facts surrounding most of those reports are disputed, making summary judgment inappropriate.  It is for the jury to decide those facts and also determine whether Defendant Holloway posed as a risk of harm to others.  Similarly, there is evidence that OSCO had notice that Defendant Holloway may have been engaging in sexual misconduct, but whether it knew or should have known he was a risk of danger to others is also a jury question.  Finally, Plaintiff presents expert testimony that OSCO's failure to supervise Defendant Holloway was the proximate cause of Plaintiff's harm.  ECF No. 158 at 14.  This element necessarily rests on the previous two being met.

### D. Loss of Consortium and Civil Conspiracy

The County moves to dismiss Plaintiff's loss of consortium and civil conspiracy claims.  ECF No. 166 at 19-20.  Plaintiff has not provided any response to the County's argument and appears to have abandoned the claims.  As such, the claims are dismissed for failure to carry the burden of creating a material fact for the jury to consider.  *Liberty Lobby, Inc.*, 477 U.S. at 256.

### II.    Defendant Holloway

Plaintiff moves for summary judgment on her WLAD and § 1983 equal

ORDER ON MOTIONS FOR SUMMARY JUDGMENT ~ 28

protection claims against Defendant Holloway.  ECF No. 161.

**A. Washington Law Against Discrimination**

Plaintiff argues that she is entitled to summary judgment on her WLAD claim against Defendant Holloway because of his admission of sexual misconduct with Plaintiff at Bud Clark Field.  ECF No. 161 at 9-13.

As the Court previously explained, Plaintiff is a member of a protected class and Bud Clark Field is a place of public accommodation, however, issues of fact exist as to the remaining elements.  Summary judgment on this claim is therefore inappropriate.

**B. 42 U.S.C. § 1983**

To make a 42 U.S.C. § 1983 claim, a plaintiff must show that (1) a person acting under color of state law (2) committed an act that deprived the plaintiff of some right, privilege, or immunity protected by the Constitution or laws of the United States.  *Leer v. Murphy*, 844 F.2d 628, 632-33 (9th Cir. 1988).  The Court's previous summary judgment order concluded that whether Defendant Holloway was acting under color of law and violated Plaintiff's constitutional rights should be left to a jury.  ECF No. 113 at 7-15.  Plaintiff argues that the Court should nevertheless grant summary judgment because the undisputed facts demonstrate a constitutional violation and that Defendant Holloway was acting under color of law.  ECF No. 161 at 13-19.  A review of the record a second time around leads the

ORDER ON MOTIONS FOR SUMMARY JUDGMENT ~ 29

Court to the same conclusion—Plaintiff's § 1983 claim must go to a jury.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment Against Defendant Okanogan County (ECF No. 158) is **GRANTED in part**.

2. Plaintiff's Motion for Summary Judgment Against Defendant Holloway (ECF No. 161) is **DENIED**.

3. Defendant Okanogan County's Motion for Summary Judgment (ECF No. 166) is **GRANTED in part**.

4. Plaintiff's claims for civil conspiracy and loss of consortium as to Defendant Okanogan County are **DISMISSED**.

The District Court Executive is directed to enter this Order and furnish copies to counsel.

DATED August 4, 2026.



THOMAS O. RICE
United States District Judge

ORDER ON MOTIONS FOR SUMMARY JUDGMENT ~ 30